NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                        :
SHAHEED WOOD,           :
                        :       Civil Action No.
        Petitioner,   :       11-7171 (NLH)
                        :
        v.               :       **O P I N I O N**
                        :
J.T. SHARTEL,         :
                        :
        Respondent.   :
_____ :

**Hillman**, District Judge:

This matter comes before the Court upon Petitioner's filing of his § 2241 petition ("Petition"), and his application to proceed in this matter _in forma pauperis_ ("IFP"). See Docket Entries Nos. 1 and 1-1. The Court will grant Petitioner IFP status and, for the reasons expressed below, will dismiss the Petition without prejudice, allowing Petitioner an opportunity to file an amended pleading.

I. **BACKGROUND**

     A. **Summary of Petitioner's Instant Claims**

The gist of the Petition can be summarized as follows. Petitioner asserts that at some point in time, after making bail on all state indictments filed against him by the Commonwealth of Pennsylvania, the federal government inherited primary jurisdiction and custody over Petitioner in connection with a

federal criminal indictment filed against him, triggering the commencement of a federal term that had not yet been imposed and would later be imposed by the sentencing federal judge to run consecutively to a state term which had been imposed at the time of the federal sentencing. See generally, Docket Entry No. 1. Because Petitioner was released into federal custody after serving his state sentence (as the sentencing federal judge intended), and his federal prison term was calculated as running from that point on (again, as his federal sentencing judge intended), Petitioner maintains that the Bureau of Prisons ("BOP") erred by not calculating Petitioner's federal term from the date he alleges the federal government inherited primary jurisdiction and custody over Petitioner.  See id.

During the administrative appeal proceedings, Petitioner: (a) requesting "credit" against his federal sentence equal in length to the term of his state sentence; and (b) referred to the holding of Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990).  This led to Petitioner's claim being examined as a Barden claim - we believe incorrectly - and Petitioner's current reliance on the rule that primary jurisdiction and custody cannot be affected by satisfaction of a writ of habeas corpus ad prosequendum issued by another sovereign. See Docket Entry No. 1, at 12-20.  This administrative confusion left Petitioner's claim at bar de facto unexhausted.

**B.   Petitioner's Prior Federal Proceedings**

Petitioner's federal prosecution took place in the United States District Court for the Eastern District of Pennsylvania ("EDPA"), and it was followed by Petitioner's § 2255 motion and a slew of appeals to the United States Court of Appeals for the Third Circuit ("Third Circuit") and petitions for certiorari to the Supreme Court.  While a survey of all these proceedings is unwarranted here, relevant information indicates that the first federal indictment was filed against Petitioner in the EDPA on July 27, 2004.  See USA v. Wood, Crim. Action No. 04-0431 (JCJ) (EDPA), Docket Entry No. 1.  Three days later, on July 30, 2004, the federal government filed an application seeking a writ of ad prosequendum as to Petitioner.  See id., Docket Entry No. 3. This application indicated that, as of July 30, 2004, Petitioner was being held at the Curran-Fromhold Correctional Facility ("CFCF"), a prison falling within the jurisdiction of Philadelphia Prison System ("PPC").  See id. at 2; accord <<http://www.phila.gov/prisons/curran_fromhold.htm>>.  Judge J. Curtis Joyner ("Judge Joyner"), the district judge presiding over Petitioner's EDPA prosecution, issued an order directing the warden of CFCF to produce Petitioner after his federal indictment.  See Wood, Crim. Action No. 04-0431 (JCJ) (EDPA), Docket Entry No. 2; accord id., Docket Entry No. 3, at 1 (another EDPA order to that effect issued, same day, by Magistrate Judge

Diane M. Welsh).[1]

Petitioner's federal criminal trial began almost a year later, on July 5, 2005, and established that:

> [o]n January 10, 2004, employees of the Pep Boys
> Automotive Store located at 4101 Market Street in West
> Philadelphia were preparing to close for the evening
> when several men wearing dark clothes, black gloves,
> and masks entered the premises and, at gunpoint,
> ordered the employees to get down on the floor.  At the
> same time, unbeknownst to the robbers, Philadelphia
> police officers Martin Demota and Marquerite Wilcox,
> dressed in full uniform, were entering the parking lot
> adjacent to the Pep Boys service area in a marked
> police vehicle.  As Demota exited his vehicle, he
> noticed a masked man in the store's service bay area
> and realized a robbery was taking place.  Demota then
> heard someone from inside the store yell, "one time," a
> street slang term used to signal police presence.  As
> the robbers began to flee in various directions, Demota
> heard gunshots.  He turned west at the corner onto
> Market Street, from which vantage point he observed a
> foot coming out of the front window of the store.
> Ultimately, Demota saw two men emerge from the store's
> front door, one thin and the other more heavyset.
> Although Demota, who was yelling "stop, police," was
> unable to see either man's face, he observed the
> thinner individual take something from the heavyset
> one, at which point there was gunfire from one of the
> men.  Demota, uninjured, returned gunfire and watched
> as the thinner man escaped, running west on Market
> Street and north on 42nd Street.  The heavyset man was
> not as lucky.  After falling to the ground, he got up
> and headed in the same direction as the thinner man.
> During the pursuit Demota lost sight of the heavyset
> man for approximately five seconds when, turning the
> corner of 42nd Street, he noticed an individual – later
> identified as [Petitioner] – approximately eight to ten
> feet in front of him.  . . .  Demota arrested
> [Petitioner] who falsely told him that he worked at Pep

---

[1]   Petitioner appeared in EDPA on August 19, 2004.  He was arraigned and detained, further increasing the time span of the original ad prosequendum writ.  See USA v. Wood, Crim. Action No. 04-0431 (JCJ) (EDPA), Docket Entries Nos. 4, 6, 7, 10, 11.

> Boys.  On March 9, 2005, a grand jury in the Eastern
> District of Pennsylvania returned a three-count
> superseding indictment against [Petitioner] charging
> him with the offenses . . . listed above.  . . .
> Following the jury verdict, the [EDPA] sentenced
> [Petitioner] to concurrent 120-month custodial terms on
> Counts I and II of the superseding indictment.  The
> [EDPA] further sentenced [Petitioner] to a 120-month
> custodial term on Count III of the superseding
> indictment, but this sentence was to run consecutively
> to that imposed on Counts I and II. [Petitioner's]
> total incarceration reflected, in part, [an] upward
> adjustment under [the 2004 version of] U.S.S.G. . . . .

United States v. Wood, 486 F.3d 781, 783-86 (3d Cir. 2007)

(footnotes omitted).

Petitioner appealed.  The Third Circuit affirmed his

conviction but reversed with regard to the amount of the upward

adjustment (on the ground that Petitioner's adjustment, if any,

should have been made under the 2002 version of U.S.S.G.) and, in

connection with the latter, remanded the case to the EDPA for a

determination of whether Petitioner's prior adjudications

(seemingly, in the Commonwealth) resulted in a "juvenile

sentence" withing the meaning of the U.S.S.G.  See id., cert.

denied, Wood v. United States, 552 U.S. 855 (2007).

That limited remand, in turn, produced Petitioner's re-

sentencing in the EDPA (which was accompanied by Judge Joyner's

determination that Petitioner's prior adjudications indeed

resulted in a "juvenile sentence" within the meaning of U.S.S.G.)

and ensuing reduction of Petitioner's federal sentence from 240

months to 214 months, which reflected a lesser upward adjustment.

See Docket Entry No. 1, at 18; see also United States v. Wood,
295 F. App'x 536 (3d Cir. 2008).  Petitioner appealed again, this
time arguing that the upward adjustment was altogether erroneous
because his state-court "juvenile sentence" did not subject him
to a "true" confinement (since he "was afforded such liberties as
home visits and participation in educational programs") and,
thus, it should have been ignored by Judge Joyner.  Wood, 295 F.
App'x at 536.  The Third Circuit rejected Petitioner's argument,
see id., and the Supreme Court again denied him certiorari.  See
Wood v. United States, 555 U.S. 1037 (2008).

     Notably, during the re-sentencing stage of the EDPA
proceedings, the government filed its re-sentencing memorandum,
which included the following:

> The . . . offense [underlying Petitioner's federal
> conviction, i.e., the armed robbery of the Pep Boys
> Store] was committed on January 10, 2004.  Prior to
> committing that offense, Petitioner] had [already] been
> convicted of a drug trafficking offense as an adult.[2]
> He had also committed, and been charged [by the
> Commonwealth] with . . . a violent felony, to wit, the
> armed robbery of a man [and it was established that
> this man was not just robbed but also] shot by
> [Petitioner.  Petitioner] was . . . ultimately
> convicted of that [armed robbery of the man on] July
> 14, 2005 . . . .

USA v. Wood, Crim. Action No. 04-0431 (JCJ) (EDPA), Docket Entry

---

[2] Therefore, it appears that Petitioner's drug trafficking
state conviction arose from an offense other than that which
produced Petitioner's "juvenile adjudication" addressed by the
Third Circuit in Wood, 295 F. App'x 536, since Petitioner was
convicted as am adult on these drug trafficking charges.

No. 63, at 21-22.[3]

Therefore, a cursory review indicates that, in addition to the January 10, 2004, offense (the armed robbery of the Pep Boys Store), Petitioner also committed and was convicted of at least three other different crimes or groups of crimes (i.e., the set of crimes underlying his "juvenile sentence," his drug trafficking crimes, and the separate armed robbery and shooting), each of which were prosecuted in the Commonwealth and at least two of which were prosecuted by the Commonwealth at the time when Petitioner's EDPA proceedings were underway.

### C.    Specifics of Petitioner's Instant Challenges

The factual allegations stated in the Petition appear both in contradiction with themselves and impossible to be squared with the EDPA's docket sheet of Petitioner's federal prosecution. Specifically, the Petition makes the following assertions:

> On January 10, 2004, the petitioner was arrested by local authorities for charges related to docket number MC 51-CR-O108431 - 2004. A review of documents provided by the municipal court of Philadelphia County indicates that the petitioner was released via bond on January 11, 2004. On January 30, 2004, the petitioner was arrested by local Pennsylvania authorities for charges

---

[3] Petitioner was sentenced to 5-to-15 years of imprisonment on some state charges on September 8, 2005, see Docket Entry No. 1, at 20.  This appears to be based on Petitioner's robbery and shooting conviction.  It also appears that the Commonwealth credited this Petitioner's sentence (rendered on the basis of this armed robbery and shooting of the man) with pretrial credit covering the entire period from January 29, 2004, to September 8, 2005, i.e., from the date of Petitioner arrest for these crimes and his sentencing.  See id.

related to docket number CP-51-CR-0300142 - 2004. This arrest placed the petitioner under the primary jurisdiction of the state authorities in Pennsylvania. On June 28, 2004, case number MC-51-CR-0108431 - 2004 was dismissed and petitioner received a federal detainer on July 27, 2004. On March 11, 2004 petitioner posted bond on case CP-31-CR-0300142 - 2004. On August 17, 2004 the petitioner entered federal custody. The petitioner remained in federal custody on case number MC-51- 0108431 - 2004 until January 2006. On September 8, 2005 the petitioner was sentenced to 5 to 15 years for case number CP-51-CR-O300142 - 2004. On March 11, 2004 petitioner posted bond on case number CP-51-CR-0300142 - 2004. Petitioner remained on bond from March 11, 2004 until January 12, 2006 at which time the bond was reinstated on case number CP-51-CR-O300142 - 2004, which puts the petitioner in federal custody "only." On January 12th, 2006 the petitioner was granted a motion for reconsideration of sentence on case number CP-51-CR-O300142. The petitioner left federal custody on January 12th, 2006 for a state court appearance for case number CP-51- CR-O300142 - 2004 in which the petitioner was re-sentenced to 5 to 10 years state time.  The petitioner was never returned to federal custody until October 7, 2009.

Docket Entry No. 1, at 1-2 (as in original).

   D.   **The Chronology**

   From the allegations and our own review of the record we

discern this chain of events and allegations:

1.   January 10, 2004:   Petitioner takes part in the armed
                         robbery of the Pep Boys Store and is
                         arrested by the Commonwealth.

2.   January 10, 2004:   Same day Petitioner is charged with that
                         robbery under the state penal law, and
                         state criminal docket number
                         51-CR-O108431-2004 ("State-108") is
                         created.

3.   January 11, 2004:   Next day, Petitioner makes bail on
                         State-108 charges and, thus, is released
                         into general population at large.

4.  January 30, 2004:    After spending 19 days of general
                         population at large, Petitioner commits
                         another crime (armed robbery and
                         shooting) and is arrested on the basis
                         of this new group of offenses.

5.  January 30, 2004:    Same day Petitioner is charged with the
                         armed robbery and shooting under the
                         state penal law, and another state
                         criminal docket number CP-51-CR-0300142
                         - 2004 ("State-300") is created.
                         Petitioner is not released on bail on
                         these new State-300 charges.

6.  March 11, 2004:      Forty days passed by, and now Petitioner
                         makes bail on these new State-300
                         charges (armed robbery and shooting)
                         and, thus, is again released into
                         general population at large.

7.  June 28, 2004:       While Petitioner is general population
                         at large on these new State-300 charges
                         (armed robbery and shooting), his State-
                         108 charges (armed robbery of the Pep
                         Boys Store) are dismissed.  Petitioner,
                         thus, still remains on bail, in general
                         population at large.

8.  July 27, 2004:       Federal indictment (based on the armed
                         robbery of the Pep Boys Store) is filed
                         in the EDPA.  That creates federal
                         criminal docket number 04-0431
                         ("Federal-431").  However, Petitioner is
                         not arrested by federal authorities;
                         rather, he is allowed to remain in
                         general population at large.

9.  July 27, 2004:       Same day, instead of arresting
                         Petitioner on his Federal-431 charges
                         (based on the armed robbery of the Pep
                         Boys Store), the federal authorities
                         merely "send" him a federal detainer (to
                         an unspecified address), in the mail.

10. July 30, 2004:       Three days later, District Judge Joyner,
                         as well as Magistrate Judge Welsh, each
                         issue a writ of <u>ad</u> <u>prosequendum</u> to the
                         warden of CFCF, directing production of

Petitioner, even though Petitioner still remains in general population at large. Inexplicably, the warden of CFCF apparently incarcerates Petitioner at the CFCF and timely produces him to the EDPA.

11.  August 17, 2004:    Petitioner claims this date as the date he is taken into federal primary jurisdiction/custody.

12.  August 19, 2004:    Two days pass.  Being produced at the EDPA on a writ ad prosequendum, Petitioner is arraigned on his Federal-431 charges, and an order of temporary detention is entered by Judge Joyner, extending the operation of the original ad prosequendum writ.

13.  August 25, 2004:    Six days pass.  Judge Peter B. Scuderi ("Judge Scuderi") of the EDPA enters another order directing Petitioner's pretrial detention on Federal-431 charges, further extending the operation of the ad prosequendum writ.

14.  July 5, 2005:       Almost a year passes. Petitioner's Federal-431 trial at the EDPA begins (on the armed robbery of the Pep Boys Store charges).

16.  July 14, 2005:      Petitioner state criminal prosecution is also underway.  Petitioner is found guilty by the state court on his State-300 charges (armed robbery and shooting).

16.  July 18, 2005:      The jury in the EDPA case enter a guilty verdict as to Petitioner's Federal-431 charges (armed robbery of the Pep Boys Store).

17.  September 8, 2005:  Almost two months pass.  Petitioner is now sentenced by the state court on his State-300 charges (armed robbery and shooting) to a 5-to-15-year term of imprisonment.  Even though Petitioner maintains that he was in general

population at large (by being on bail) until August 17, 2004, and that he was in federal primary jurisdiction/ custody from August 17, 2004, and on, the Commonwealth – again inexplicably – elects to grant Petitioner pretrial detention credit against his state sentence (based on the State-300 charges) for the entire period from the date when Petitioner committed the armed robbery and shooting and until the date of his state sentencing on these charges.

18. January 5, 2006:     Four months pass.  Judge Joyner of the EDPA holds a sentencing hearing on Petitioner's Federal-431 charges (armed robbery of the Pep Boys Store) and orders Petitioner's 240-month federal sentence to run consecutively to his already-imposed state sentence based on the State-300 charges.  About that time, the federal <u>ad</u> <u>prosequendum</u> writ is satisfied, and Petitioner is handed by the federal government back to the Commonwealth authorities, which take physical custody of Petitioner (so he can serve his State-300 sentence).

19. May 17, 2007:     Seventeen months pass.  During this period, Petitioner appealed his EDPA conviction and sentence.  The Third Circuit affirms Petitioner's conviction on his Federal-431 charges but remands for re-sentencing under the 2002 version of U.S.S.G.

20. June 14, 2007:     Almost a month passes. Now, Judge Joiner executes another <u>ad</u> <u>prosequendum</u> writ, this time directing the warden of State Correctional Institution Fayette ("SCI Fayette"), where Petitioner is serving his State-300 sentence to produce Petitioner for federal re-sentencing.

21. September 4, 2007:     Petitioner is re-sentenced by Judge Joyner on Petitioner's Federal-431 charges.  The re-imposed sentence is,

again, ordered to run consecutively to Petitioner's state sentence served at SCI Fayette on the basis of Petitioner's State-300 charges.  Since his federal <u>ad prosequendum</u> writ is satisfied, Petitioner is again returned to the SCI Fayette.

22. October 7, 2009:    More than two years pass.  Now, Petitioner is paroled from his state sentence based on his State-300 charges into federal custody to serve his sentence based on his Federal 431 charges; the BOP calculates his federal sentence as beginning on that day.

## II.  DISCUSSION

The foregoing alleges a surreal set of circumstances that hinge on Petitioner's claim that on March 11, 2004 he was released into general population at large on his State-300 charges by making bail ("Bail in Question").  Because of this Bail in Question assertion, the Petition reads as claiming that Petitioner remained in general population at large until: (a) the warden of the CFCF managed to get physical custody of him on July 30, 2004; and (b) eighteen days later, that is, on August 17, 2004, Petitioner's <u>ad prosequendum</u> appearance in the EDPA triggered federal primary jurisdiction and custody.

Conversely, if the Bail in Question is factored out of Petitioner's allegations, then the entire chain of underlying events, including issuance of all of the EDPA writs of <u>ad prosequendum</u>, physical custody over Petitioner by the CFCF warden, and even the grant of pretrial detention credit by the

Commonwealth against Petitioner's sentence based on State-300
charges immediately make sense and present a coherent picture.
In light of the foregoing, it appears more likely that
Petitioner's claim of bail is mistaken or false.

       If so, Petitioner's allegations are facially without merit.
See George v. Longley, 2012 U.S. App. LEXIS 3368 (3d Cir. Pa.
Feb. 21, 2012) (per curiam).  The Third Circuit in George v.
Longley analyzed as follows:

>       [Petitioner], a federal prisoner . . . , filed a
> petition for writ of habeas corpus (28 U.S.C. § 2241)
> to challenge the way in which the Federal Bureau of
> Prisons (BOP) computed his federal sentence.  The
> District Court denied . . . the petition . . . .
> [Petitioner] now appeals.  Having carefully examined
> the lengthy factual record, we find no legal or clear
> factual error in the District Court's opinion, and we
> will therefore affirm its judgment.  Between 2003 and
> 2005, [Petitioner] was arrested several times for
> various state offenses.  One of those arrests (for
> which state charges were eventually dropped) attracted
> the attention of federal authorities.  On April 26,
> 2005, a federal grand jury issued an indictment
> charging [Petitioner] with [a federal crime].  An
> arrest warrant was issued the next day.  On July 16,
> 2005, [Petitioner] was arrested by a Pittsburgh police
> task force for (unrelated) [state-law] offenses.  He
> was held at the Allegheny County Jail (ACJ).  Pursuant
> to a writ of habeas corpus ad prosequendum,
> [Petitioner] was produced in federal court for an
> August 17, 2005 hearing.  He eventually pleaded guilty
> to the federal . . . offense on September 19, 2005.
> Five months later, [Petitioner] was sentenced to 71
> months of incarceration and three years of supervised
> release; after sentencing, he was transferred back to
> the ACJ, the writ of habeas corpus ad prosequendum
> "satisfied in full."  The federal judgment was filed as
> a detainer with the Commonwealth of Pennsylvania.
> [Petitioner] eventually pleaded guilty to selected
> charges in three remaining state cases, and received a
> net three-to-six-year term of imprisonment.  This

sentence was to be consecutive to his federal sentence. [Petitioner] apparently served this state term at numerous facilities, before being paroled on April 30, 2008, and entering federal custody pursuant to the detainer.  Deeming the federal sentence to have commenced at this time, the BOP calculated that, with good-conduct time, [Petitioner] would be released on November 27, 2012.  Dissatisfied with this projected release date, [Petitioner] pursued administrative remedies, arguing that a "nominal bond" granted by the state court in November 2006 had the effect of "placing [him] into federal . . . custody; [and] [s]ince there was no other custody holding [him], the BOP should credit [him] from November 20, 2006[,] onward."  His efforts were unsuccessful; the BOP construed the challenge as a request for nunc pro tunc designation and, after weighing the relevant factors, denied relief. [Petitioner] then filed the instant habeas petition, the gravamen of which echoed, but did not quite match, what he had raised in his administrative proceedings.  Invoking the "primary custody" or "primary jurisdiction" doctrine, [Petitioner] argued that the federal authorities gained primary custody over him at some point before the explicit commencement of his federal sentence in April 2008, thereby "forcing" the running of his federal term of incarceration. See . . . 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served").  [Petitioner] calculated his "correct" release date, with "anticipated good-conducted time," to fall in September of 2010.  The District Court denied relief, addressing [Petitioner's] primary-custody argument as well as its offshoots, such as an implied claim that the BOP had otherwise miscalculated his sentence or had erred in declining to grant nunc pro tunc relief.  In so doing, the District Court took judicial notice of [Petitioner's] state judgments, which were explicitly intended to run consecutive to George's federal term of incarceration.  . . . [T]his appeal followed.  . . . Our review is [based on] the "presumption of regularity of the sentence, which the petitioner must overcome." Espinoza v. Sabol, 558 F.3d 83, 89 n.7 (1st Cir. 2009). . . .  At the outset, we observe that [Petitioner] cannot fairly be said to have exhausted his

administrative remedies on the specific issues raised
in his § 2241 petition.  "Ordinarily, federal prisoners
are required to exhaust their administrative remedies
prior to seeking a writ of habeas corpus pursuant to 28
U.S.C. § 2241."  Gambino v. Morris, 134 F.3d 156, 171
(3d Cir. 1998). [However], we will follow the District
Court's example and liberally construe his pleadings to
include [both Barden and "primary jurisdiction"]
claims.  See Diop v. ICE/Homeland Sec., 656 F.3d 221,
229 (3d Cir. 2011).  Assuming without deciding that
[Petitioner's] argument about custody [indicated his
interest in asserting that his state-granted "nominal
bail" in question did] force early commencement of his
federal sentence, we agree with the District Court that
the Commonwealth of Pennsylvania maintained [primary]
custody of [Petitioner] throughout the relevant
[federal] proceedings.  [In those state proceedings,
Petitioner] was actually arrested on state charges by
agents representing the non-federal sovereign [even if
that arrest was, in a way, affected by the interest of
the federal authorities in prosecuting Petitioner,
eventually, on federal charges stemming from the same
events on which Petitioner was initially arrested on
state charges that were dropped].  He argues, in the
alternative, that he was granted release-on-
recognizance bond on August 1, 2005, but (1) the record
suggests that he was not actually released on that day;
and (2) that he was granted bond in one case, does not
mean he was bonded out on the other cases for which he
was being held.  Finally, he argues that the nominal
bond granted in November 2006, shortly before his state
sentencing, forced him into federal custody, but the
record shows that he was not granted nominal bond on
one of the three cases, undermining his claim that
Pennsylvania "relinquished" its hold on him.  Nor does
writ of habeas corpus ad prosequendum serve to transfer
custody to the federal authorities.  Ruggiano v. Reish,
307 F.3d 121, 125 n.1 (3d Cir. 2002), superseded on
other grounds by U.S.S.G. § 5G1.3(c) cmt. n.3(E)
(2003); see also BOP Program Statement 5880.28 § 3b
(1999) (emphasizing that ad prosequendum writs do not
effect a transfer to federal custody).  In sum, the
District Court did not err in reading the record to
support the Government's view of the custody transfers
and (as a result) the BOP's calculation of when
[Petitioner's] federal sentence properly began.  With
regard to nunc pro tunc designation, which we review
for abuse of discretion, see Barden, 921 F.2d at 483,

we are in accord with the District Court.  The BOP
followed the guidelines we established in Barden;
moreover, the federal sentencing court was (and
remains) silent on whether the federal sentence was to
be consecutive or concurrent, in light of the default
presumption of consecutive sentences, see 18 U.S.C. §
3584(a).  Turning to the BOP's general calculation of
sentence, we also detect no error.  The record suggests
that each sovereign extensively credited [Petitioner]
with time he spent in pretrial custody.  Moreover, .18
U.S.C. § 3585(b) prohibits double counting of sentence
credits.  Blood v. Bledsoe, 648 F.3d 203, 209 (3d Cir.
2011) (per curiam), cert. denied, 181 L. Ed. 2d 782
(2012).  To be sure, [Petitioner] points to several
portions of the record that lend some support to his
reading of events . . . .  We are puzzled, too, by
[these issues and] bond issues identified supra in note
8.  . . .  But [Petitioner] proceeds on untested and
uncertain legal ground, and while he has presented some
evidence that supports his argument of transferred
custody, he has not met his burden of providing a
"preponderance of the evidence."  Skaftouros, 2011 U.S.
App. LEXIS 25222.  To the contrary: the record suggests
that [Petitioner] was in state custody from the time of
his July 2005 arrest to his April 2008 parole [into
federal custody].  And in light of the fact that
[Petitioner] state term of incarceration was to
consecutive to his federal term, we agree with the
District Court and the Government that "there can be no
disputing that [Petitioner] is serving his sentences in
the manner he should be: consecutively."  In sum, as we
determine that the District Court did not err . . . we
will affirm its judgment.

George v. Longley, 2012 U.S. App. LEXIS 3368, at *1-14

(footnotes, citations to appellate docket and to underlying

district court's determinations omitted).

    The footnote 8, expressly referred in the main text of

George v. Longley, reads:

    The issue of bond is one of the more vexing, as the
    state dockets produced by the Government do not always
    clarify either the flow of custody or the actions taken
    by the state courts . . . .  This is especially

important with regard to the August 1 date, as the
record suggests that [Petitioner] did make bond on
[certain] other two [state] cases on which he was being
held.  But, as the Government argues, the record also
suggests that bond in those cases was [at some point]
forfeited for failure to appear, which we find to be a
reasonable reading of the record.

Id. at *11-12, n. 8 (citations to appellate docket and state law

omitted).

Thus, unless Petitioner was, in fact, released into general

population at large by making the Bail in Question and by being,

in addition, not held in custody of the Commonwealth on the basis

of any other sentence or charge, his Petition is facially without

merit, and the BOP's decision (not to calculate his federal

sentence as triggered sometime during the summer of 2004) was

necessarily a permissible, if not the only possible, construction

of the statute.[4]   See George v. Longley, 2012 U.S. App. LEXIS

_____

[4] The standards set forth in Chevron U.S.A. Inc. v. Natural
Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778,
81 L. Ed. 2d 694 (1984), govern a court's review of an agency's
regulations construing a statute.

When a court reviews an agency's construction of the
statute which it administers, it is confronted with two
questions. First, always, is the question whether
Congress has directly spoken to the precise question at
issue. If the intent of Congress is clear, that is the
end of the  [*9] matter; for the courts, as well as the
agency, must give effect to the unambiguously expressed
intent of Congress. If, however, the court determines
Congress has not directly addressed the precise
question at issue, the court does not simply impose its
own construction on the statute, as would be necessary
in the absence of an administrative interpretation.
Rather, if the statute is silent or ambiguous with
respect to the specific issue, the question for the

3368, at *1-14.

Moreover, it warrants noting that the case at bar offers no Barden implications: unlike George v. Longley, Petitioner's federal sentence on Federal-431 charges was imposed after Petitioner's state sentence rendered on his State-300 charges, and Petitioner's federal sentence (and re-sentence) was expressly imposed to run consecutively to his State-300 sentence.  Thus, the BOP has no jurisdictional basis, be it under 18 U.S.C. § 3621(b), as explained in Barden, or under any other provision, to override Judge Joyner's express directive that Petitioner's federal sentence would run concurrently to his State-300 Commonwealth sentence.[5]

---

court is whether the agency's answer is based on a permissible construction of the statute.

Id. at 842-43 (footnotes omitted).  Consequently, this Court is without power to second guess the BOP's interpretation of a governing provision since the Court's mandate to overrule the BOP's decision could be utilized only if the Court determines that the BOP acted contrary to express Congressional directive or that the BOP abused its discretion.  Simply put, the Court may not substitute its judgment for the agency's judgment.  See id.; see also Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) ("a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another").

[5] The Court notes, in passing, that the BOP's authority to grant Barden "credit" was significantly called into question by the Supreme Court's recent decision Setser v. United States, 2012 U.S. LEXIS 2538 (U.S. Mar. 28, 2012), where the majority observed that "§ 3621(b) . . . does not confer [upon the BOP] authority to choose between concurrent and consecutive sentences."  Id. at *15.  In other words, Setser left open question of whether § 3621(b) is best read as indicating: (a) that the authority to

However, a deficient <u>Barden</u> claim aside, the Court, at this juncture, cannot rule out the possibility that the events asserted by Petitioner, no matter how surreal, still took place. "Some improbable allegations might properly be disposed of [on the record], but to dismiss them as frivolous [as pled,] without any factual development[,] is to disregard the age-old insight that many allegations might be 'strange, but true; for truth is always strange, [s]tranger than fiction.'  Lord Byron, Don Juan, canto XIV, stanza 101 (T. Steffan, E. Steffan, & W. Pratt eds. 1977)."  <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 811 (3d Cir. 2001) (quoting <u>Denton v. Hernandez</u>, 504 U.S. 25, 33 (1992)).

Therefore, granting Petitioner the benefit of the doubt, this Court finds it warranted to allow him an opportunity to re-plead his challenges.  Since the issue here is the one of the factual record (rather than a legal argument), Petitioner amended petition must state only facts establishing, by preponderance of the evidence, that: (a) the BOP's reading of the flow of jurisdiction and custody over Petitioner was an unreasonable

---

make a concurrent/consecutive determination, in a <u>Barden</u> scenario, is *shared* by the BOP and federal sentencing courts; or (b) that the BOP has no authority to make such determination, and a federal court's silence as to concurrence *must* necessarily produce consecutive state and federal sentences in a <u>Barden</u> scenario, due to the operation of 18 U.S.C. § 3584(a) (which states that "multiple terms of imprisonment imposed at different times [are always presumed to] run consecutively unless the [federal] Court [expressly] orders that the terms are to run concurrently").

construction of Petitioner's state and federal records; (b) Petitioner was not held in any form of Commonwealth custody at the time when his federal detainer was filed or, at a certain point in time after that federal detainer was lodged, all Petitioner's state charges and sentences were bailed, dismissed, paroled or expired, thus allowing Petitioner's entry into general population at large but for the operation of the federal detainer; (c) the entire score of ad prosequendum writs was issued by Judges Joyner, Welsh and Scuderi without any factual basis; (d) the warden of CFCF had physical custody over Petitioner solely on the basis of a federal arrest warrant or federal detainer; (e) the Commonwealth took custody over Petitioner without foundation when it placed him in a state facility to serve his State-300 sentence; (f) without foundation, the Commonwealth credited Petitioner with the entire pretrial detention term from January 29, 2004, to September 8, 2005; and (g) Petitioner is not serving his federal sentence in the manner it was intended by Judge Joyner.[6]

_____

[6] Since Supreme Court in Setser held, in no ambiguous terms, that a federal judge has the power to impose a federal sentence to run consecutively or concurrently to a yet-to-be imposed state sentence (which might never come into existence at all), the logic of Setser opened the door to the question whether a federal judge may order the federal government to relinquishing its primary custody/jurisdiction over the defendant in favor of the state which has prosecuted, convicted and sentenced that defendant while having secondary jurisdiction/custody: by ordering that the defendants would first serve his/her state sentence and only then serve the federal sentence.  However, at

III. CONCLUSION

For the foregoing reasons, the Petition will be dismissed, as asserting factual predicates that cannot be reconciled with itself or the docket of the United States District Court for the Eastern District of Pennsylvania. Such dismissal will be without prejudice to Petitioner's filing of his amended pleading clarifying Petitioner's factual and procedural allegations.[7]

An appropriate Order accompanies this Opinion.

s/ Noel L. Hillman
**NOEL L. HILLMAN, U.S.D.J.**

Dated: May 2, 2013
At Camden, New Jersey

_____

this juncture, the Court need not reach this issue.

[7] The Court's quotation of the Petition, provided in Section titled "Specifics of Petitioner's Instant Challenges," shows that Petitioner's factual assertions are patchy, shuffled out of chronological order and, worse over, heavily injected with his bald conclusions as to whether he was in federal or state jurisdiction/custody at each particular point in time. Therefore, Petitioner's amended pleading shall state only facts: by listing all Petitioner's state proceedings (and all developments that took place in those state proceedings), in chronological order, and explain – clearly and concisely – whether Petitioner was placed, held, or left in custody upon each such development. If Petitioner's assertions to that effect state a viable claim, this Court will direct Respondent to answer this claim.